[No. 23417–0–I.   Division One.   December 27, 1989.]

MICHAEL J. CONVERSE, ET AL, *Respondents,* v. THE
LOTTERY COMMISSION, *Appellant.*

*Kenneth O. Eikenberry, Attorney General, Richard A. Heath, Senior Assistant,* and *Ann M. Cox, Assistant,* for appellant.

*Levy S. Johnston* and *Johnston & Neal,* for respondents.

PEKELIS, J.—The Washington State Lottery Commission (Commission) appeals the trial court's order directing the Commission to pay Seattle–First National Bank (Seattle–First) the annual net prize payment of lottery winner Michael J. Converse. The Commission contends that the trial court's order approving Converse's voluntary assignment of his annual installment to Seattle–First as collateral for a business loan is not an "appropriate judicial order" within the meaning of RCW 67.70.100.[1] We reverse.

The essential facts are not in dispute. In March of 1986, Converse won the Washington State Lottery. As the winner, he is entitled to receive 20 annual payments of $100,000.

After winning the lottery, Converse decided to establish a business to manufacture insulating underwear for scuba divers. In order to do so, he arranged to borrow $350,000 from Seattle–First. The loan was to be secured by the physical assets of the business and Converse's annual lottery winnings for the calendar years 1989 through 1994.

On October 4, 1988, Converse and Seattle–First jointly petitioned the Snohomish County Superior Court for an order assigning Converse's annual lottery winnings to Seattle–First for the years 1989 through 1994. The trial court signed the order as presented. The Commission did not receive notice and was not made a party to this proceeding.

---

[1] In his statement of issues, Converse states that the Commission does not have standing in this action. This assignment of error is not supported by any argument or authority and thus we do not consider it. *BC Tire Corp. v. GTE Directories Corp.,* 46 Wn. App. 351, 355, 730 P.2d 726 (1986), *review denied,* 108 Wn.2d 1013 (1987). Moreover, it appears that Converse actually agreed to the Commission's intervention in these proceedings.

Thereafter, Converse and Seattle–First submitted the agreed order to the Commission, but the Commission refused to honor it, contending that it violated RCW 67.70-.100. The petitioners then filed a motion seeking an order of contempt against the Commission for its refusal to comply with the order. The Commission was then allowed to intervene in the proceeding.

On November 8, 1988, the trial court heard the petitioners' contempt motion. The court declined to find the Commission in contempt, but after entering findings of fact and conclusions of law, affirmed the prior order confirming the partial assignment of Converse's annual lottery payments.

The Commission appeals from both rulings, contending that RCW 67.70.100 prohibits a lottery prize winner from voluntarily assigning his winnings. It argues that the exception permitting assignments does not convert voluntary assignments approved by the court pursuant to an agreed order into an assignment "pursuant to an appropriate judicial order". Rather, the Commission argues, the exception applies to judicial orders which, for example, arise from garnishment and bankruptcy proceedings.

RCW 67.70.100 provides:

> No right of any person to a prize drawn is assignable, except that payment of any prize drawn may be paid to the estate of a deceased prize winner, and *except that any person pursuant to an appropriate judicial order may be paid the prize to which the winner is entitled.* The commission and the director shall be discharged of all further liability upon payment of a prize pursuant to this section.

(Italics ours.)

No Washington court has yet interpreted RCW 67.70-.100. We do so now according to general principles of statutory construction. *See Washington Fed'n of State Employees v. State Personnel Bd.*, 54 Wn. App. 305, 309, 773 P.2d 421 (1989). "If a statute is unambiguous, its meaning must be derived from its language alone." *Everett Concrete Prods., Inc. v. Department of Labor & Indus.*, 109 Wn.2d 819, 822, 748 P.2d 1112 (1988). Only if the statute is

ambiguous will the reviewing court look to other sources to determine its meaning. *Everett,* 109 Wn.2d at 822.

■ RCW 67.70.100's general prohibition against assignments is clear and unambiguous. It is the exception permitting assignments "pursuant to an appropriate judicial order" which is arguably ambiguous. However, exceptions to the general rule, especially when the general rule is unambiguous, should be strictly construed with any doubts resolved in favor of the general provision, rather than the exception. *See State v. Wright,* 84 Wn.2d 645, 652, 529 P.2d 453 (1974).

■ Converse concedes that the general prohibition against assignments of lottery winnings should be narrowly construed. He nevertheless maintains, however, that any lawful judicial order which confirms an assignment is permissible under the exception. If this court were to accept Converse's interpretation of RCW 67.70.100, any person who wished to assign his lottery winnings for any reason could petition the court for an order affirming the agreed to assignment and avoid RCW 67.70.100's general prohibition. In addition, nothing would prevent a lottery winner from assigning his winnings to a number of parties, thereby burdening the Lottery with the administrative expense involved in parceling out the winner's annual payment to various assignees. In short, Converse's interpretation of the exception would swallow the rule. RCW 67.70.100 must be read to prohibit all voluntary assignments, including those which are confirmed by court order.

This construction of RCW 67.70.100 is in accord with the only court case interpreting an identical provision in the New Jersey State Lottery Law. In *McCabe v. Director of New Jersey Lottery Comm'n,* 143 N.J. Super. 443, 363 A.2d 387 (1976), the court held that the New Jersey State Lottery Law prohibited voluntary assignments confirmed by judicial order, noting that the lottery winner's request for a court order was:

an exception to an exception; *i.e.,* a request for a court–ordered sanction of an assignment of winnings which would run counter

to the general statutory prohibition against assignments, all within the framework of a statute which itself is an exception to the State's general public policy against gambling. *McCabe,* 143 N.J. Super. at 448; *see also State ex rel. Meyers v. Ohio State Lottery Comm'n,* 34 Ohio App. 3d 232, 235, 517 N.E.2d 1029, 1034 (1986) (quoting Ohio Rev. Code Ann. § 3770.07 (Page 1988)) (Ohio lottery law permitting assignment of a prize award *"pursuant to the order of a court of competent jurisdiction'"* does not permit either the voluntary assignment or the forcible attachment of the prize by the winner's creditors).

The Lottery Commission has adopted rules interpreting RCW 67.70.100 which are consistent with our reading of the statute. WAC 315–06–120(7) prohibits any person from assigning his right to a lottery prize except:

(a) That payment of a prize may be made to any court appointed legal representative, including, but not limited to, guardians, executors, administrators, receivers, or other court appointed assignees; or

(b) For the purposes of paying federal, state, or local tax. ·

█ Courts are to accord great deference to an agency's interpretation of a statute "when the statute is within the agency's field of expertise." *Inland Empire Distribution Sys., Inc. v. Utilities & Transp. Comm'n,* 112 Wn.2d 278, 282, 770 P.2d 624 (1989). Where the Legislature has specifically delegated rule–making power to an agency, its regulations are presumed valid. *Anderson, Leech & Morse, Inc. v. Washington State Liquor Control Bd.,* 89 Wn.2d 688, 695, 575 P.2d 221 (1978). "One asserting invalidity has the burden of proof, and the challenged regulations need only be reasonably consistent with the statutes they implement." *Anderson,* 89 Wn.2d at 695. Only compelling reasons demonstrating that the regulation is in conflict with the intent and purpose of the legislation warrant striking down a challenged regulation. *Anderson,* 89 Wn.2d at 695.

Converse has demonstrated no compelling reason to justify striking down WAC 315–06–120(7). WAC 315–06–120(7)'s strict limitations on assignments are reasonable and consistent with RCW 67.70.100's general prohibition

against assignments. In addition, RCW 67.70.040 directs the Commission to promulgate rules governing the operation of the state lottery that are for both the "convenience" of ticket holders and "the efficient and economical operation and administration of the lottery". RCW 67.70.040. While WAC 315–06–120(7)'s narrow interpretation of RCW 67.70.100 may not be "convenient" to Converse, it certainly minimizes the Lottery's administrative costs.

More importantly, this narrow interpretation is faithful to the obvious intent of our Legislature, and that of many other states, to extend its parens patriae protection to lottery winners in order to insulate them from their own human frailties and the possible excesses to which they might be subjected. This intent is clearly evidenced by the Legislature's decision to parcel out lottery winnings in installments and to prohibit lottery winners from putting themselves into debt by assigning excessive amounts of their winnings to creditors. *See McCabe,* 363 A.2d at 390.

Having failed to articulate any compelling reasons to invalidate WAC 315–06–120(7), the Commission's narrow interpretation of RCW 67.70.100 as prohibiting voluntary assignments confirmed by court order should be upheld.

In conclusion, we hold that a plain reading of RCW 67.70.040 and the public policies underlying it compels the interpretation expressed in WAC 315–06–120(7). RCW 67.70.100 clearly prohibits Converse from voluntarily assigning his lottery winnings and the exception permitting assignments pursuant to "appropriate" judicial orders does not extend to such voluntary assignments.

Reversed.

GROSSE, A.C.J., and RINGOLD, J. Pro Tem., concur.