ELECTRONIC CITATION:  2001 FED App. 0001P (6th Cir.)
File Name:  01b0001p.06

# BANKRUPTCY APPELLATE PANEL OF THE SIXTH CIRCUIT

| | | |
|---|---|---|
| In re:  DOUGLAS E. BOOTH, | ) | |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| DOUGLAS E. BOOTH, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | No. 00-8053 |
| | ) | |
| ELIZABETH A. VAUGHAN, TRUSTEE, | ) | |
| | ) | |
| Appellee. | ) | |
| _____ | ) | |

Appeal from the United States Bankruptcy Court
for the Northern District of Ohio, Western Division at Toledo.
No. 99-33854.

Argued: January 10, 2001

Decided and Filed:  March 16, 2001

Before: AUG, BROWN, and RHODES, Bankruptcy Appellate Panel Judges.

_____

## COUNSEL

**ARGUED:**  L. Douglass McCrury, UAW LEGAL SERVICES PLAN, Toledo, Ohio, for Appellant.  Elizabeth A. Vaughan, Toledo, Ohio, for Appellee.  **ON BRIEF:** L. Douglass McCrury, UAW LEGAL SERVICES PLAN, Toledo, Ohio, for Appellant.  Elizabeth A. Vaughan, Toledo, Ohio, for Appellee.

———————————————

## OPINION

———————————————

**STEVEN W. RHODES**, Chief Bankruptcy Appellate Panel Judge.  The bankruptcy court granted the Trustee's motion for turnover of a pro rata portion of a postpetition profit sharing payment that the Debtor received from his employer.  On appeal, the Debtor argues that because he filed his bankruptcy petition before his employer calculated its profits at the end of the year, he had no legal or equitable interest in the profit sharing when he filed and therefore no part of the payment is property of the estate.

The Panel concludes that when the Debtor filed bankruptcy, his interest in his employer's profit sharing plan did come within the broad concept of property of the estate found in 11 U.S.C. § 541(a)(1).  The Panel so concludes because the Debtor's interest in the profit sharing payment was sufficiently rooted in his prepetition employment, even though that interest was contingent and therefore unenforceable when he filed bankruptcy. The Panel also rejects the Debtor's contention that whatever interest he had in his employer's profit sharing was held in a trust and is thus not property of the estate under 11 U.S.C. § 541(c)(2).  Accordingly, the order of the Bankruptcy Court is AFFIRMED.

## I.   ISSUES ON APPEAL

The first issue on appeal is whether the Debtor had any interest in his employer's profit sharing when he filed his bankruptcy petition.  The second issue is whether that interest was held in a beneficial trust.

## II.   JURISDICTION AND STANDARD OF REVIEW

The Bankruptcy Appellate Panel of the Sixth Circuit has jurisdiction to decide this appeal.  The United States District Court for the Northern District of Ohio has authorized appeals to the BAP.  A final order of a bankruptcy court may be appealed by right under 28 U.S.C. § 158(a)(1).  For purposes of appeal, an order is final if it "'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'"  *Midland Asphalt Corp. v. United States*, 489 U.S. 794, 798, 109 S. Ct. 1494, 1497(1989) (citations omitted).

Conclusions of law are reviewed de novo.  *See Nicholson v. Isaacman* (*In re Isaacman*), 26 F.3d 629, 631 (6th Cir. 1994).  "De novo review requires the Panel to review questions of law independent of the bankruptcy court's determination."  *First Union Mortgage Corp. v. Eubanks (In re Eubanks)*, 219 B.R. 468, 469 (B.A.P. 6th Cir. 1998) (citation omitted).

## III.    FACTS

On September 17, 1999, Douglas Booth filed a chapter 7 bankruptcy petition. When he filed his bankruptcy petition, Booth was employed by DaimlerChrysler Corporation, which has a profit sharing program pursuant to its collective bargaining agreement with the United Auto Workers Union.  To receive a profit sharing payment under this program, DaimlerChrysler must have profits for a given year and an employee must be employed by DaimlerChrysler at the end of the year.  Further, the program provides that the funds are non-assignable until they are distributed.

On December 7, 1999, the Trustee filed a "Motion for Turnover" of "any Bonus or Profit Sharing check received from the Debtor's Employer for 1999, upon receipt."  Booth objected to the Trustee's motion, arguing that when his petition was filed, he had no interest in any profit sharing and that if he had any interest, it was in the form of a beneficial interest in a trust.

On March 3, 2000, Booth received a profit sharing payment from DaimlerChrysler in the amount of $4,866.51.

On June 20, 2000, the bankruptcy court entered its Memorandum Opinion and Decision holding that the pro rata part of the Debtor's profit sharing that related to his prepetition earnings was property of the bankruptcy estate.  This appeal followed.

## IV.    DISCUSSION

A.  The Debtor's interest in the profit sharing payment is property of the estate to the extent that it is based upon prepetition employment.

The Debtor first argues that based on two factors, he had no legal or equitable interest in the profit sharing when he filed his bankruptcy petition.  First, his employer had not yet declared a profit for the year.  Second, his employment could have been terminated before the end of the year.  The issue, therefore, is whether these contingencies compel

the conclusion that under § 541(a)(1), the bankruptcy estate has no interest in the profit sharing.

The analysis begins with the applicable statutory provision. *United States v. Ron Pair Enters.*, 489 U.S. 235, 241, 109 S. Ct. 1026, 1030 (1989); *Landreth Timber Co. v. Landreth*, 471 U.S. 681, 105 S. Ct. 2297 (1985).

Section 541 of the Bankruptcy Code defines property of the bankruptcy estate as follows:

> (a) The commencement of a case under section 301, 302 or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held:
>
> (1) Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case.

11 U.S.C. § 541(a)(1).

According to the legislative history, the purpose of § 541(a) is to "bring anything of value that the debtors have into the estate." H.R. REP NO. 95-595, at 176 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6136.

The determination as to whether a debtor's interest in property is property of the bankruptcy estate is a question of federal law. However, state law generally controls the question of whether the debtor has an interest in property. *See Butner v. United States*, 440 U.S. 48, 55, 99 S. Ct. 914, 918 (1979).

Under Ohio law, "[a] contingent interest is one in which there is no present fixed right of either present or future enjoyment; but in which a fixed right will arise in the future under certain specified contingencies." *Cleveland Trust Co. v. McQuade*, 142 N.E.2d 249, 257 (Ohio App. 1957) (citation omitted). Therefore, in this case, the Debtor's interest in his employer's profit sharing constituted a contingent interest at the time of the petition.

Significantly, under Ohio law, a contingent interest is fully alienable and may be attached by creditors. *Moore v. Foresman*, 179 N.E.2d 349, 353 (Ohio 1962). It follows that a contingent interest is an interest in property that becomes property of the estate under § 541(a)(1) when a bankruptcy petition is filed.

The United States Supreme Court came to the same conclusion in a case decided under the Bankruptcy Act. The Supreme Court stated, "[T]he term 'property' has been construed most generously and an interest is not outside its reach because it is novel or contingent or because enjoyment must be postponed." *Segal v. Rochelle*, 382 U.S. 375, 379, 86 S. Ct. 511, 515 (1966). In that case, the Supreme Court held that the debtors' claim for a loss carry-back tax refund is property of the estate, even though it is contingent when the petition is filed. There, as here, the debtors asserted that because the refund could not be claimed until the end of the year, it was not property of the estate, but the Supreme Court concluded that this circumstance was not sufficient to take the interest out of the estate. In addition, there, as here, the debtors argued that certain postpetition events might eliminate the claim altogether, but again the Supreme Court rejected this argument.

Similarly, in applying the Bankruptcy Code of 1978, the courts have, across a wide variety of circumstances, almost uniformly adhered to the view that contingent interests are property of the estate under § 541(a)(1). In each of the following circumstances, the debtor's contingent interest was held to be property of the estate:

A debtor's contingent right to a postpetition employment termination payment under a prepetition employment agreement. *Rau v. Ryerson* (*In re Ryerson*), 739 F.2d 1423 (9th Cir. 1984).

A debtor's contingent interest in an earned income tax credit, even when the petition is filed before the end of the tax year. *Baer v. Jones* (*In re Montgomery*), 224 F.3d 1193 (10th Cir. 2000); *Johnston v. Hazlett* (*In re Johnston*), 209 F.3d 611, 612 (6th Cir. 2000) (The court specifically rejected the debtor's argument that, "because she was not entitled to the EIC until the end of the tax year, she had neither a legal nor an equitable interest in the EIC at the time she filed her petition, and therefore, it was not part of the bankruptcy estate."); *see also* cases collected in *In re Johnston*, 209 F.3d at 612 n.2.

A debtor's interest in her husband's separately titled property that was contingent on the outcome of their pending divorce case. *In re Greer*, 242 B.R. 389, 396 (Bankr. N.D. Ohio 1999).

A debtor's contingent claim against a third party. *Borock v. Mathis* (*In re Clipper Int'l Corp.*), 154 F.3d 565, 567 (6th Cir. 1998) ("Thus, '[m]oney whose origin is part of the pre-petition period belongs to the estate pursuant to § 541.'" (quoting *Hartley v. Derryberry* (*In*

*re Hartley*), 47 B.R. 159, 161 (Bankr. N.D. Ohio 1985) (alteration in original))); *Bauer v. Commerce Union Bank, Clarksville, Tennessee*, 859 F.2d 438, 440-41 (6th Cir. 1988); *In re Yonikus*, 996 F.2d 866, 869 (7th Cir. 1993) ("A debtor's contingent interest in future income has consistently been found to be property of the bankruptcy estate. . . . In fact, every conceivable interest of the debtor, future, nonpossessory, contingent, speculative, and derivative, is within the reach of § 541."); *Johnson, Blakely, Pope, Bokor, Ruppel & Burns, P.A. v. Alvarez* (*In re Alvarez*), 224 F.3d 1273 (11th Cir. 2000), *cert. denied*, __ U.S. __, 121 S. Ct. 1083 (2001); *Polis v. Getaways, Inc.* (*In re Polis*), 217 F.3d 899 (7th Cir. 2000); *Kollar v. Miller*, 176 F.3d 175 (3d Cir. 1999); *Wolfe v. Gilmour Mfg. Co.*, 143 F.3d 1122 (8th Cir. 1998); *State Farm Life Ins. Co. v. Swift* (*In re Swift*), 129 F.3d 792 (5th Cir. 1997); *Spartan Tube & Steel, Inc. v. Himmelspach* (*In re RCS Engineered Prods. Co., Inc.*), 102 F.3d 223 (6th Cir. 1996). In *Buckeye Union Ins. Co. v. Four Star Constr. Co.* (*In re Four Star Constr. Co.*), 151 B.R. 817, 820 (Bankr. N.D. Ohio 1993), the court stated:

> Under the former Bankruptcy Act a contingent interest in personal property passed to the case trustee only if it was capable of being assigned or was subject to execution, seizure, or sequestration. 4A Collier on Bankruptcy ¶ 70.37 at 453 (14th ed. 1978). That requirement no longer exists under the Bankruptcy Code. *Id.*, ¶ 541.08[1] (15th ed. 1984). By including all legal interests without exception, Congress indicated its intention to include all legally recognizable interests although they may be contingent and not subject to possession until some future time.

A debtor's right to receive property, contingent on surviving others. *Neuton v. Danning* (*In re Neuton*), 922 F.2d 1379 (9th Cir. 1990); *Stokes v. Trust Co. of Ga. (In re McLoughlin*), 507 F.2d 177 (5th Cir. 1975); *Potter v. Drewes* (*In re Potter*), 228 B.R. 422, 423-24 (B.A.P. 8th Cir. 1999); *Anderson v. McGowan (In re Anderson)*, 128 B.R. 850 (D.R.I. 1991); *Rose v. Carlson* (*In re Rose*), 113 B.R. 534 (W.D. Mo. 1990); *In re Winsted Mem'l Hosp.*, 249 B.R. 588 (Bankr. D. Conn. 2000); *In re Knight*, 164 B.R. 372 (Bankr. S.D. Fla. 1994); *Federman v. Garten* (*In re Garten*), 52 B.R. 497 (Bankr. W.D. Mo. 1985).

A debtor's contingent interest in an earnest money deposit in an escrow account. *Turner v. Burton* (*In re Turner*), 29 B.R. 628 (Bankr. D. Me. 1983).

An attorney debtor's right to legal fees under a contingent fee agreement with a client. *Turner v. Avery*, 947 F.2d 772, 774 (5th Cir. 1991); *Jess v. Carey* (*In re Jess*), 169

F.3d 1204 (9th Cir. 1999); *Canatella v. Towers* (*In re Alcala*), 918 F.2d 99 (9th Cir. 1990); *Carlson v. Brandt*, 250 B.R. 366 (N.D. Ill. 2000); *Watts v. Williams*, 154 B.R. 56 (S.D. Tex. 1993); *In re Paul A. Nelson, P.A.*, 203 B.R. 756 (Bankr. M.D. Fla. 1996); *Banner v. Bagen* (*In re Bagen*), 186 B.R. 824, 829 (Bankr. S.D.N.Y. 1995), *aff'd*, 201 B.R. 642, 643-44 (S.D.N.Y. 1996).

A debtor's contract right to commissions attributable to insurance policies sold prepetition, but paid postpetition, whether or not vested or contingent upon future services. *Williams v. Tomer* (*In re Tomer*), 147 B.R. 461 (S.D. Ill. 1992); *McCracken v. Selner* (*In re Selner*), 18 B.R. 420 (Bankr. S.D. Fla. 1982).

The debtor's right to a refund of a deposit made pursuant to a residential life use fee agreement, contingent on the debtor moving out of the residence before a stated time. *In re Thompson*, 253 B.R. 823, 825 (Bankr. N.D. Ohio 2000).

A debtor's interest in a stock option that is contingent on postpetition employment. *Stoebner v. Wick* (*In re Wick*), 249 B.R. 900 (Bankr. D. Minn. 2000), *rev'd on other grounds*, 256 B.R. 618 (D. Minn. 2001); *Allen v. Levey* (*In re Allen*), 226 B.R. 857 (Bankr. N.D. Ill. 1998).

A debtor's future interest in lottery winnings. *In re Keim*, 212 B.R. 493 (Bankr. D. Md. 1997); *In re Pizzi*, 153 B.R. 357 (Bankr. S.D. Fla. 1993); *Sirek v. Dalton* (*In re Dalton*), 146 B.R. 460 (Bankr. D. Ariz. 1992); *Wallick v. Rhode Island State Lottery Comm'n* (*In re Skog*), 144 B.R. 221 (Bankr. D.R.I. 1992); *In re Meyers*, 139 B.R. 858 (Bankr. N.D. Ohio 1992); *Boyn v. Brown* (*In re Brown*), 82 B.R. 967 (Bankr. N.D. Ind. 1988), *aff'd*, 86 B.R. 944 (N.D. Ind. 1988); *In re Miller*, 16 B.R. 790 (Bankr. D. Md. 1982).

This review of the cases demonstrates two significant points. First, the array of circumstances in which the cases have held that a contingent interest is property of the estate is extensive. Second, the uniformity of the results in these cases is compelling. As a result, the Panel must conclude that the contingencies upon which the Debtor relies in arguing that his profit sharing is not property of the estate are indistinguishable from the contingencies in the many cases in which the property interest was held to be property of the estate.

The Debtor relies on *DeMarco v. Ohio Decorative Prods., Inc.*, 19 F.3d 1432 (6th Cir. 1994) (unpublished table decision). However, as an unpublished decision, *DeMarco* has limited precedential value. *Salamalekis v. Comm'r of Soc. Sec.*, 221 F.3d 828, 833

(6th Cir. 2000) (An unpublished opinion "is not binding precedent"); *Honigman v. Comerica Bank* (*In re Van Dresser Corp.*), 128 F.3d 945, 948 (6th Cir. 1997); *McMeans v. Brigano*, 228 F.3d 674, 682 (6th Cir. 2000) (Unpublished decisions have "limited precedential force."); *United States v. Ables*, 167 F.3d 1021, 1031 (6th Cir.), *cert. denied*, 527 U.S. 1027 (1999) ("[A]n unpublished opinion has no precedential force[.]"); *Gibson v. Gibson* (*In re Gibson*), 219 B.R. 195, 201 n.2 (B.A.P. 6th Cir. 1998) ("Although not binding, unpublished decisions of the Sixth Circuit may be cited if persuasive and no published decisions will serve as well."); *Belfance v. Black River Petroleum, Inc.* (*In re Hess*), 209 B.R. 79, 82 n.3 (B.A.P. 6th Cir. 1997). *See also In re Braddy*, 195 B.R. 365, 370 (Bankr. E.D. Mich. 1996) (collecting cases) ("[A]lthough the Court of Appeals does recognize that its unpublished decisions are not binding precedent in the same sense as published decisions, the court does cite an unpublished decision when there is no published decision on point and the reasoning of the unpublished decision is found persuasive.").

However, determining whether *DeMarco* is persuasive is not a straightforward endeavor. As demonstrated below, the opinion is subject to interpretation. The Panel concludes that the proper interpretation of *DeMarco* is consistent with the nearly unanimous line of cases holding that a contingent property interest is property of the estate and therefore this interpretation is persuasive. On the other hand, the alternative interpretation proposed by the Debtor is inconsistent with the case law and must be rejected as unpersuasive.

In *DeMarco*, four years after filing a Chapter 7 bankruptcy, the plaintiff was terminated from his position as a sales representative. Later he filed a civil suit against his employer for post-termination sales commissions based on an alleged agreement with his employer calling for the payment of "life-of-the-part" sales commissions. The employer responded that the plaintiff lacked standing because any such commissions were property of the plaintiff's bankruptcy estate and only the bankruptcy trustee had standing to sue.

Initially, the court of appeals observed, "Under the expansive construction courts have given the term, there can be little doubt that rights to post-termination funds, no matter what their designation (*e.g.*, contract value, commissions), qualify as 'property' for purposes of the bankruptcy code." *DeMarco*, 1994 WL 59009 at *7. This observation is entirely consistent with the reasoning and results of the cases reviewed above. However, the court of appeals then held that in the circumstances of that case, the sales

commissions allegedly owing to the plaintiff on sales after his termination were not property of the bankruptcy estate.

In this case, the Debtor relies on the following statement in *DeMarco* in support of his position:

> The crucial inquiry, instead, is *when* those property interests came into existence. . . . [A] future interest will not become a § 541 property right until it has, in effect, vested; or put another way, until the conditions that go to the *creation* of the right have been satisfied.
> . . .
> [T]he debtor's property right here did not accrue until after a bankruptcy petition had been filed. Only after being terminated would DeMarco then become entitled to post-termination commissions, and even then, whether such funds would actually be forthcoming was far from a certainty.

*DeMarco*, 1994 WL 59009 at *7-8.

The Debtor argues that this language means that only vested rights become property of the estate. Thus, the Debtor contends that because his right to a profit sharing payment had not vested when he filed bankruptcy, it did not become property of the estate. The difficulty with this interpretation of *DeMarco* is that it cannot be reconciled with the Supreme Court's decision in *Segal v. Rochelle* and the extensive body of case law reviewed above that holds otherwise. Moreover, the Debtor's interpretation is also inconsistent with the two specific cases on which *DeMarco* relied. *Rau v. Ryerson* (*In re Ryerson*), 739 F.2d 1423 (9th Cir. 1984); *Hoffman v. Bruneau* (*In re Bruneau*), 148 B.R. 4 (Bankr. D. Conn. 1992). Indeed, *Ryerson* and *Bruneau* compel the reading of *DeMarco* that is consistent with *Segal* and the case law on point.

In *Ryerson*, before filing for bankruptcy, the debtor and his employer entered into an agreement that upon termination, the employer could at its option pay the debtor "contract value" based on sales commissions if certain conditions were met. Four years later, the debtor filed bankruptcy. Nine months after that, his employment was terminated. The court determined that the debtor's right to payment of the contract value was property of the bankruptcy estate, at least to the extent that the contract value related to prepetition services. The basis of this result was the accepted premise, "By including all legal interests without exception, Congress indicated its intention to include all legally recognizable

interests although they may be contingent and not subject to possession until some future time." 739 F.2d at 1425 (citing H.R. REP. NO. 95-595, at 175-76 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6136).

On the other hand, in *Bruneau*, the court determined that severance payments to a debtor based on her postpetition election to participate in an employer's "enhanced exit" program were not property of the bankruptcy estate because, under the *Segal* test, the payments were not sufficiently rooted in the debtor's prepetition past. Before the debtor filed her bankruptcy petition, her employer offered her a one-time option to terminate her employment on a specific date and receive a severance package. The debtor exercised the option one week after filing for bankruptcy. The court determined that the purpose of the severance payments to the debtor was to substitute for future income:

> The Program payments are clearly intended as enhanced severance benefits offered generally to sustain employees while they seek other jobs. The debtor was faced with the choices of remaining employed at the Hartford and trust that the Hartford would not terminate her; accept the Program's enhanced benefits to sustain her while she sought employment; or chance being discharged within a short period with substantially fewer benefits compared to those under the Program.

*Bruneau*, 148 B.R. at 6. Based on this purpose, the court concluded that the debtor's severance benefits were not sufficiently rooted in her prepetition past and, therefore, were not property of the estate. In contrast to *Bruneau*, the payment in *Ryerson* was grounded in a prepetition contract and was based on the debtor's prepetition services.

Thus, the two cases on which *DeMarco* relied, *Ryerson* and *Bruneau*, agree on the test for property of the estate when the property is a contingent right. Both adopt and apply the rule that when the contingent right is based on the debtor's prepetition activities, it is property of the estate. The key distinction on which *Ryerson* and *Bruneau* turned was whether the contingent right was based on prepetition circumstances. If the court in *Ryerson* required vesting for the interest to be property of the estate, as the Debtor here argues, the court would have found that the payments were not property of the estate because the debtor's employment had not yet been terminated when the bankruptcy was filed and the contract right was not vested. Similarly, if the *Bruneau* court required vesting, none of its extended discussion regarding the purpose of the severance payments would

have been necessary, because there too, the contract right had not vested upon bankruptcy.

Nothing in *DeMarco* explicitly or implicitly rejects the test adopted and applied in *Ryerson* and *Bruneau*. Indeed, as noted above, the court of appeals quoted with approval the statement in *Ryerson* that a contingent interest can be property of the estate. *DeMarco*, 1994 WL 59009 at *6 (quoting 739 F.2d at 739). Thus, the better interpretation of *DeMarco* is that it adopts the nearly unanimous view of the other courts that a contingent interest is property of the estate if sufficiently rooted in the debtor's prepetition past. Accordingly, the Panel rejects the Debtor's interpretation of *DeMarco* that only vested rights are property of the estate.

Finally, the Debtor also relies on *Sharp v. Dery*, 253 B.R. 204 (E.D. Mich. 2000). However, because the unique approach in *Sharp* does not follow applicable precedent on this issue, it is unpersuasive. In *Sharp*, the debtor filed his chapter 7 bankruptcy petition on December 21, 1998. On February 22, 1999, the debtor received a bonus of $11,331.63 based upon his employment during 1998. To qualify for a bonus, the employer's plan required the employee to be in good standing when the company made the bonus payment. Further, the timing of the bonus payment was solely at the employer's discretion. The district court held that no part of the bonus payment was property of the bankruptcy estate even though the bonus was based almost entirely upon the debtor's prepetition employment. The district court stated, "The determinative issue in this case, therefore, is whether Debtor had an enforceable right to receive the bonus check when he filed his petition...." *Sharp*, 253 B.R. at 207.

There is a fundamental problem with *Sharp*. Focusing on whether the debtor had an "enforceable" contract right when the petition was filed would exclude <u>all</u> contingent interests from the bankruptcy estate, because by definition, a contingent interest is not "enforceable" until the contingency is met. The approach in *Sharp* is thus inconsistent with the broad concept of property of the estate in § 541(a)(1) and with the extensive case law, reviewed above, holding that a contingent interest can be property of the estate. Section 541 neither states nor implies any requirement that the debtor must have an enforceable interest in property for that interest to become property of the bankruptcy estate. Accordingly, the Panel rejects the reasoning and result of *Sharp*.

The Panel agrees with the bankruptcy court that in the present case, the Debtor's profit sharing payment was sufficiently rooted in his prepetition past to be included in property of his bankruptcy estate under § 541(a).

The bankruptcy court prorated the profit sharing so that only that portion of the profit sharing that related to the Debtor's prepetition employment became property of the estate. This is entirely appropriate when only part of the payment is based upon prepetition conduct. *See Jess v. Carey* (*In re Jess*), 215 B.R. 618, 621 (B.A.P. 9th Cir. 1997), *aff'd*, 169 F.3d 1204 (9th Cir. 1999); *Towers v. Wu* (*In re Wu*), 173 B.R. 411, 415 (B.A.P. 9th Cir. 1994).

B.  The Debtor's interest in the profit sharing payment was not held in a beneficial trust containing a restriction on transfer enforceable under nonbankruptcy law.

The Debtor's alternative argument is that his interest in the profit sharing program is excluded from property of the estate pursuant to § 541(c)(2).  That section provides, "A restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title."  11 U.S.C. § 541(c)(2).  The Debtor argues that the collective bargaining agreement restricts the transfer of profit sharing payments until after they are distributed by the employer and that if the employer was holding money on his behalf, a constructive trust was created.

The Sixth Circuit recently held, "An inquiry under § 541(c)(2) normally has three parts: First, does the debtor have a beneficial interest in a trust?  Second, is there a restriction on the transfer of that interest?  Third, is the restriction enforceable under nonbankruptcy law?" *Taunt v. General Ret. Sys. of the City of Detroit* (*In re Wilcox*), 233 F.3d 899, 904 (6th Cir. 2000).  Although the collective bargaining agreement in this case does contain a restriction against transfer, the Debtor has not shown the existence of either an express trust or a constructive trust.

Under Ohio law, an express trust requires: (1) "an explicit declaration of trust, or circumstances which show beyond a reasonable doubt that a trust was intended to be created"; (2) "an intention to create a trust"; and (3) "an actual conveyance of . . . property . . . to [a] trustee[.]" *Ulmer v. Fulton*, 195 N.E. 557, 564 (Ohio 1935).  In the present case, the collective bargaining agreement does not explicitly declare a trust, nor do the circumstances show beyond a reasonable doubt an intent to create a trust.  Additionally,

there was no conveyance of the property to a trustee. Therefore, the Debtor's claim of an express trust must be rejected.

Further, under Ohio law, a constructive trust is defined as follows:

> A constructive trust is a trust created by operation of law against the holder of a legal right to property which that person should not, in equity and good conscience, hold or enjoy; it is a relationship associated with property subjecting the title holder to an equitable duty to convey it to another because otherwise the title holder would be unjustly enriched.

*Belfance v. Bushey* (*In re Bushey*), 210 B.R. 95, 104 (B.A.P. 6th Cir. 1997) (quoting *Union Sav. & Loan Ass'n v. McDonough,* 655 N.E.2d 426, 428 (Ohio Ct. App. 1995)). Here, the Debtor makes no assertion of an unjust enrichment while his employer holds the profit sharing prior to its distribution. In any event, the employer has since made the profit sharing payment to the Debtor. The circumstances of the present case do not warrant the imposition of a constructive trust.

## V. CONCLUSION

The bankruptcy court's decision finding that a prorated share of the profit sharing is property of the bankruptcy estate is **AFFIRMED**.